May I have the clerk call the next case please? 314-0039, Equal to State of Illinois, appellate by Justin Nicolosi v. Laverta Mabry, appellant by Editha Rosario-Moore. Ms. Rosario-Moore, good afternoon. Good afternoon, Your Honors. May it please the court and opposing counsel, Mr. Nicolosi, my name is Editha Rosario-Moore and I'm here on behalf of the Office of the State Appellate Defender representing the defendant Laversa Mabry. He was convicted after a jury trial of aggravated battery with a firearm, an unlawful possession of a weapon by a felon, and then sentenced to 36 years imprisonment. And this happened after defense counsel failed to call his alibi witness at trial, failed to impeach the victim's identification of him as a shooter, and instead drew the jury's attention to irrelevant prejudicial evidence and argued a theory not supported by the evidence. So the defendant has raised one issue in this case, and that's counsel was ineffective for all of these reasons and he respectfully asked for a new trial. Now, we argue that while the failure to call the alibi witness alone was ineffective assistance, the other aspects of counsel's performance really demonstrate his overall ineffectiveness in this case. But I'd like to first focus on counsel's failure to call the witness. Now, the facts of the case are that in August of 2008, Jerome Ashford was shot in the arm by a man he described as wearing a half mask. The shooter was accompanied by another man, and Ashford's girlfriend, Tamara Ward, was also present, but she didn't identify the shooter. The evidence showed that there had been bad blood between the defendant and Mr. Ashford. The defendant was dating Mr. Ashford's ex-girlfriend, Anisha Smith, and their daughter was calling the defendant Daddy. Ultimately, Ashford identified the defendant as the shooter. And this case is unique in that the defendant has been tried three times for aggravated battery with a firearm and unlawful possession of a weapon by a felon. At the first two trials, Smith testified to the defendant's alibi. She testified that the defendant was with her asleep at the time of the shooting and that the defendant didn't commit the offense. Now, after the first trial, the jury was deadlocked and the court declared a mistrial. At the second trial, there was a nearly deadlocked jury. During deliberations, the jury submitted a question to the court and then also, unsolicited, gave the information that it was deadlocked nine to three in favor of guilt. And ultimately, the jury found the defendant guilty, but this honorable court reversed and remanded the case for a new trial on direct appeal. Now, there's no doubt that when Ms. Smith testified, the evidence in the case was close. It was Ashford's word against her word, and this honorable court described the evidence as such on direct appeal. But at the third trial, Ms. Smith was not called to testify. And we acknowledge that there's a strong presumption of sound trial strategy in the decision of whether to call a witness, but that presumption can be overcome when it appears that counsel's decision was so irrational and unreasonable that no reasonably effective attorney under similar circumstances would make the same decision. And we argue that the record demonstrates that this was the case here. We don't simply have counsel failing to call a witness who was called at another trial. We have counsel who informed the court, the state, and the jury that he intended to call the witness. Now, it's important to note, too, that this is new counsel. At the first two trials, the defendant had one lawyer. He hired a new lawyer for the third trial. Counsel indicated in this case that he intended to call Smith in discovery disclosures. A subpoena was issued. Now, the status pointed out that it was returned and not served. But counsel still subsequently continued to inform the court and the state that Ms. Smith would testify to the defendant's alibi, consistent with her previous testimony. And on the day of trial, counsel submitted a handwritten list of witnesses, listing only Aneesha Smith. Right before trial began, counsel asked the court to adopt all previous motions that prior counsel had put forth, which included the defendant's alibi. And he said that there would be, quote, no surprise as to what Smith would testify to since she testified at the first two trials. Counsel then informed the jury during opening statements that he intended to call Smith. He said that the evidence would show that Ashford lied about the defendant being the shooter because he was jealous, because the defendant was dating his ex-girlfriend and his daughter was calling the defendant daddy. Now, he then told the jury that they would hear from the mother about where she was at and what happened. Now, the state points out that defense counsel did not exactly use the word alibi, but then proceeds not to explain what counsel could possibly have meant by saying the mother would tell the jury about what happened and where she was at. We submit that the statement is meaningless unless it relates to the shooting incident. And why would we hear about where she was at unless the defendant was with her? We also submit that the word alibi carries a negative connotation. It implies somehow that parties are putting forth a story rather than what happened, which is what counsel said. In any event, defense counsel highlighted to the jury that he planned to present important evidence and then failed to do so. And this wasn't sound trial strategy because we know that counsel knew the value of Smith's testimony. He told the court in the state that he did. He was privy to the transfer to the first two trials. We know that sometime after opening statements, counsel didn't call Smith, never mentioned her again. And we argue that there's no conceivable sound trial strategy for failing to do this, to not mention it, to explain unavailability or unwillingness to ask for a continuance. Well, first of all, he was convicted once with that testimony, but then this court reversed and gave him the trial, right? That's right. And we don't know why. And also, her testimony is subject to some cross-examination about the delay in sharing this information with the police. Right. And this lawyer seemed to take the tack on it. Rather than putting up a witness that the state can attack, I'm going to beat up on her, showing why all their witnesses are unreliable. Well, we submitted in our reply that the state's characterization of Smith as a poor witness really overstates the weaknesses in Smith's testimony. The state points out that she didn't go to the police immediately. We submit it's really not that damaging. It's not unusual for witnesses to go directly to the police. What she did do was she sat down with defense counsel two months after the shooting, signed a statement, and it was submitted to the state. The state also pointed out some other aspects that we felt were not significant, and they went to the weight of the testimony. She testified that she set up a meeting between the defendant and Ashford, and that Ashford said he didn't feel safe. That goes to the weight. The state also points out that Ashford claimed that she told him if he dropped the charges against the defendant, she let him claim their daughter on taxes. But on cross-examination, she denied it. This is not a case where there was really damaging impeachment. There were no prior and consistent statements. She didn't change her story. And the state's characterization of Smith's testimony is contradicted by this honorable court's own characterization of the evidence as close when she did testify. And it's undeniable that when she testified, it benefited the defendant. At the time of the third trial, were this witness and the defendant still an item? That's unknown. But we'd also like to point out that if, for example, sometime between opening statements and the end of the trial, which was a one-day trial, she all of a sudden became unwilling or unavailable, counsel had the opportunity to either tell the court or the state to do something about it. At the close of evidence, or near the close of evidence, it was about 3.30 on the day of trial, the court submitted to the state and defense counsel that they could close the evidence and send the jury home and do closings and deliberations the next day. The state said he wanted to continue. Defense counsel said, sure, we're here. If there was something that happened where she didn't show up or was unwilling, and counsel didn't want to tell the court or the state, he had that opportunity. But instead, he decided to push through. Or maybe he knew something that maybe he wasn't going to get the testimony that he should have given before. We're having to speculate. Well, we submit that the rest of the record indicates that the way counsel did handle trial shows that he was cumulatively ineffective. We'd also like to point out that the defendant filed a pro se claim of ineffective assistance of counsel post-trial. Defense counsel was at that hearing. The state argued that he wasn't, but he was. Court scheduled that hearing with defense counsel in mind, because defense counsel, same as Larry Smith, he said he wanted to follow it for ARDC purposes and to pursue his bond assignment. And so they scheduled it with him in mind. And then on the day of the hearing, the court denied the defendant's motion. And they proceeded to sentencing. The defendant was reviewing the post-sentencing investigation report. And then the court addresses Mr. Larry Smith on another matter. So we know he's there. And presumably, if he had some information to give, we would presume that the state would call him to testify at the hearing on this motion. Now, it's true that the defendant didn't call him. The defendant was proceeding pro se. And we know that the defendant doesn't get special treatment. But that is a factor in this case. And what we argue is that there are cases, the state-sided Tomasso versus the United States, which said there's a preference to review ineffective assistance claims on collateral review. But that same case also said there are going to be cases where counsel's ineffectiveness is so apparent from the record that you can deal with it on direct appeal. And that's what we have here. There's really no sound trial strategy for dealing with the case the way that counsel did. The other aspects of counsel's performance were that he drew the jury's attention to irrelevant prejudicial evidence and then argued a theory not supported by the evidence. So on cross-examination of Detective Garner, he was the lead investigating detective in this case, he elicits that the police didn't recover a mask in connection with the shooting. And that's presumably very favorable to the defense. But then counsel proceeds to ask the detective about a time when the defendant was pulled over, driving someone else's car, and there was what he described as a kind of ski mask or something in the back seat. And there's virtually no value in drawing the jury's attention to this aspect. And it's highly prejudicial in a case where the shooter was said to be wearing a strange mask during the summer months. Counsel then proceeds to argue a theory not supported by the evidence. So we know in this case that the state presented evidence that Ashford was shot in his arm and that he was shot in the back of his house. There were bullets in the back door. There were casings on the backyard ground. There was a trail of blood leading from the back in the kitchen to the front in the living room. And counsel spent time cross-examining Ward and Garner on their positions during the shooting. It wasn't exactly clear what he was trying to say, but it seemed that he was trying to imply that the shooting didn't happen the exact way they said it did. And then he proceeded to impeach the crime scene investigators, asking about the bullet trajectory, even though they repeatedly said that they weren't ballistics experts. And he tries to tie it all up in closing and says that the jury would need to reconstruct the evidence as in the case of who shot JFK or JR from the television show Dallas, because the shooting actually occurred at the front of the house. Now the prosecutor strongly and predictably responded that this was, quote, absolutely and utterly ridiculous. And normally I would think comments like that are too extreme. It might even raise an issue about them. But in this case, that defense theory was in complete contravention of the physical evidence. And we submit so irrational and unreasonable that no reasonably effective attorney would have made the same decision. We also note that counsel failed to impeach Ashford's identification of the defendant as a shooter. So even if all of this, let's say, is reasonable, Ashford's identification of the shooter is what this case hinges on. And counsel had at least two opportunities to impeach that identification. Counsel adopted a motion in Limine that prior counsel filed asking to impeach Detective Garner on Ashford's identification of the second man who was with the shooter. Ashford originally said that he had a ponytail. But at trial, he testifies that he had an afro. And that's presumably to get his testimony to line up with Ward, because even though Ward didn't identify the defendant, she identified the other man as someone she knew from school. And she said that he had an afro. And so counsel asked for permission to do this. He didn't do it. He then doesn't impeach Ward either. And her identification or her description of the shooter got increasingly specific with each trial. She initially says that the shooter was bald and he wore a mask. But she couldn't say anything else about the mask. By the second trial, she says the shooter had a mustache and the mask was held up by a strap, presumably to line up with Ashford's identification. He said that the mask had some sort of velcro strap. She was impeached on that omission at the second trial. And by the third trial, she says that she could see the shooter's eyes and knew that Ashford was having problems with the man who fit the description. And so counsel failed to draw the jury's attention to that. We understand that each failure to impeach may not individually rise itself to unreasonable or ineffective assistance. But taken together with the other prospects, we certainly think that counsel's performance was unreasonable. And we also submit that it prejudiced the defendant because we know that at the first two trials, Ms. Smith testified the evidence was close. And cumulatively, but for the failure to call Smith and the other aspects, there's a reasonable probability that the jury would have found that the defendant was not guilty. And so, Your Honors, if there are no other questions, we respectfully ask for a new trial. Thank you. Thank you. Mr. Nicolosi, good afternoon. Good afternoon, Your Honors. May it please the Court, counsel. Your Honors, I did not write the brief in this case, nor did I have the ability to read the record in this case. So my arguments will be limited to what I gleaned from the briefs. And I think I have gleaned enough to be able to argue that this defendant's requested relief should be denied here because Justice Schmidt used the word speculate. And that's exactly what we're doing here, is we're speculating as to why this attorney did or did not do what he didn't do at this trial. And I think it's got to be hard perhaps for trial lawyers to have their performance picked apart. And reading the briefs in our cases, listening to the oral record of our arguments that are posted online, it's got to be frustrating for them because they don't have the chance to explain themselves. But in this case, and in all similar cases, the attorneys do have chances to explain themselves. And the attorney in this case wasn't given that opportunity. This isn't the right forum for this particular discussion. As this court has held and the U.S. Supreme Court has held, there are more appropriate forums for these types of decisions. And, of course, those are gone upon collateral review and post-conviction petitions. This matter is beyond the record here on appeal because, again, the counsel, the defendant, argues that there is no conceivable reason to do this. But what if there is? Because, again, we're just speculating. We're just guessing why this attorney did what he did. Sure, he didn't represent the defendant in Trials 1 and 2, but, of course, he almost certainly read them. He knew that Anisha Smith was called and testified in the first two. He knew what she testified to. And he clearly, at one point, planned on calling her. He discussed her testimony in his opening statement. So the question is, why didn't he call her to testify? And that's a question we can't answer here because we have no idea. The attorney who wrote the brief for the state, Mrs. Kelly, in this case, she distinguished the cases the defendant cited for the proposition that some cases are so objectively obvious as to the performance of the attorney that we don't need to send it back for an evidentiary hearing on a motion or something like that. But those cases, the cases the defendant cited, such as King and the like, they were either post-conviction cases where there was an evidentiary hearing or there was an evidentiary hearing on a post-trial motion where the attorney was alleged ineffective and was able to explain why he or she did or didn't do what they did. And people said that that is clearly the most preferable option here because, again, we're just speculating as to why this attorney didn't call her. And as Justice Schmidt again pointed out during counsel's argument, that there is at least one conceivable reason, and that was that Anisha Smith was a poor witness. She didn't come forward in August when this shooting happened. She didn't tell anybody for a couple of months until October, and then she didn't tell the police until December. And further, she acknowledged during the testimony, I believe it was the second trial, that she met with the victim in this case and offered that if he dropped the charges, she would allow the victim to claim their daughter on his taxes, a benefit to him, and that she also offered that the defendant would pay him money if he dropped these charges, also a benefit to him. This doesn't make the defendant look good. And, again, that could be certainly conceivable reason why not to call this witness. So if we're going to speculate, I believe the briefs in this case present reasonable reasons as to why the attorney didn't call this witness. But even more importantly than that, the people don't believe we should be speculating here. As to that, I mean, I can see your argument. To the other thing, though, I'm not seeking to impeach the testimony of Ward, where she goes from this involved guy, or actually I think at first she says she didn't even see the shooting and couldn't identify him, and then with each time of it back, so to speak, she becomes more, you know, much more convinced and certain of the identity of the shooter. I mean, he sort of lays down on that. He doesn't ask me a question. I mean, I don't think, I mean, I don't know that they're, what you're going to find other than he could say, oh, it's trial strategy, but I don't know how, you know, just that as a bald explanation, I don't know how you ever get past thinking that that is not something that a reasonable attorney would do or that that's a plausible explanation for some of these other things. Or even with regard to the witness, to not notify, you know, somehow this woman's not going to testify, which, you know, he seems to know when the judge says, you know, we could continue to tomorrow, you don't think that there's anything that, you know, is just apparent from the record here that does not need further explanation? Well, Your Honor, that's part of the problem with my particular argument here. I didn't get a chance to read the record. I didn't write the briefs. I didn't have access to the record. So I can't really expound upon what the record presented. I'm sorry. But the individual who wrote this brief has since retired. So but anyway, but as to your question, I think I can answer it kind of in a similar manner I addressed the first part in my argument is that you mentioned why didn't he impeach Ward and whatever other errors that the counsel, the defendant, alleges. Again, we're still speculating. And maybe it's hard to come up with a reason on the outside of this case why this attorney who was inside of this case did what he did or didn't do what he didn't do. But, again, I don't believe the people would submit that we shouldn't have to see this attorney perform in the way he performed. And there are clearly avenues where we could, where this attorney can take the stand and testify and explain everything. He can be asked why he didn't call Aneesha Smith. He can be asked why he didn't. Is one of the avenues a Krinkle hearing? It could have been. But I don't believe at this point, the defendant already filed a post-trial motion. I don't. The post-trial motion was that he had ineffective assistance of counsel. Yes. Counsel was presumably at the hearing. Sounds like for a different reason, though, if I understand everything correctly. So the trial court could, and I think under our case law should, have held a hearing. I'd like to just make one other observation, and that is that there may have been flaws in the alibi witness' testimony, but surely that was better than saying that this killing, or I'm sorry, not killing, shooting took place at the front of the house when everything indicates that it took place at the back. Even though I have not read the record, that does seem alarming. I would agree with you. So would you agree that that's ineffective assistance? On the surface, it was certainly erroneous, but the question is, did that affect the outcome of the trial? And again, without having read all of the evidence on this case, I don't think I'm in the right position to say whether it did or it didn't. Your Honor, all I can say is that this attorney should be at least given the opportunity to be asked why he didn't, why he performed the way he performed. And the fact is, at this particular stage, right now, I believe the only, the people would strongly believe that the only option at this point is to give permission to deny defendant's relief and permit defendant to go about filing a post-conviction petition if that's what he chooses to do. And the people just, I don't know why I keep rambling, but the people just submit that this is not the proper form for this particular issue, and the people respectfully request that this court deny defendant's requested relief. If there are any other questions, I'd be happy to ramble through and answer. Thank you, Mr. Nicolosi. Ms. Rosario-Moore, rebuttal. Your Honors, I just want to say that if we take the state's premise that this isn't the proper form for these kinds of issues, then we can never raise ineffective assistance claims on direct appeal. I understand that Massaro v. United States, which is the case that was cited, states a preference. But it also states that there will be cases where it's so apparent from the record that counsel was ineffective that you can address the issue on direct appeal. I don't relish raising ineffective assistance claims. I really don't. But a defendant deserves a fair trial. And it's really hard to review this record and not conclude that counsel was failed to call the one witness he said he would call up until opening statements, and then completely undermine the credibility of defense during closing arguments. Regarding the state's point that the cases we cited to you were on collateral review, we're analogizing to the court's reasoning here. And the court didn't speculate there either. Counsel in both the cases we cited in King and Bryant were asked, and they said, trial strategy. I can't really remember exactly why, but it was trial strategy. And the court said, there's really no conceivable trial strategy for failure to call an available alibi witness that would bolster an otherwise uncorroborated defense. You know, this is a unique case. It's not common for counsel to perform in this way and to be so cumulatively ineffective. I think, as Justice McDade pointed out, there may have been flaws in the testimony, but it was undeniably beneficial to the defense to have her testify, or at least to handle it in a way that didn't undermine the case. In opening statements, did he tell the jury he was going to call her? He said he would call the mother to explain where she was at and what happened. He didn't use her name and he didn't use the word alibi, but we said that that wasn't necessary in that case. At the very least, he highlighted to the jury that they were going to hear an attorney present it or to explain anything about it. He basically changed course early on in the case we would submit. Did the defendant know that he wasn't going to call Smith? The record doesn't indicate that he did. And, I mean, he raised a pro se. He went pro se, which is why I think the Kringle hearing didn't happen. He went pro se before and then after trial, but before post-trial motions,  but one of the issues that he raised was that counsel was ineffective for the failure to call Smith. So as far as we know from the record, he expected her to be called as well. If there are no other questions, we just submit that the defendant respectfully asks for a new trial due to counsel's ineffectiveness. Thank you, Your Honors. Thank both of you for your arguments this afternoon. We'll take the matter under advisement and will issue a written decision as quickly as possible. The court will now stand in recess until 9 o'clock tomorrow morning.